**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 11-cv-00967-REB-KMT

TIMOTHY JOHN KENNEDY,

    Plaintiff,

v.

MARK A. FINLEY,
ERNEST ROGER PEELE,
SHERIFF TERRY MAKETA,
SHERIFF JOHN WESLEY ANDERSON,
EL PASO COUNTY SHERIFF'S OFFICE, and
UNITED STATES OF AMERICA,

    Defendants.

## ORDER RE: MOTION TO DISMISS

**Blackburn, J.**

The matters before me are (1) **County Defendants' Motion To Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6)** [#6][1] filed June 1, 2011; and (2) plaintiff's **Request for Oral Arguments on the County Defendants' Motion To Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6)** [#13] filed July 19, 2011. I find and conclude that oral argument would not materially assist in the resolution of the substantive motion, and, therefore, deny the request for such arguments. As for the motion to dismiss itself, I grant the motion in part and deny it in part.

---

[1] "[#6]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

## I.  JURISDICTION

I have subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question).

## II.  STANDARD OF REVIEW

The motion to dismiss seeks dismissal of claims and defendants under Fed.R.Civ.P.12(b)(6).  When ruling on a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), I must determine whether the allegations of the complaint are sufficient to state a claim within the meaning of Fed.R.Civ.P. 8(a).  I must accept all well-pleaded allegations of the complaint as true.  **McDonald v. Kinder-Morgan, Inc.**, 287 F.3d 992, 997 (10th Cir. 2002).  "However, conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." **Fernandez-Montes v. Allied Pilots Association**, 987 F.2d 278, 284 (5th Cir. 1993); **see also Ruiz v. McDonnell**, 299 F.3d 1173, 1181 (10th Cir. 2002) ("All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true."), **cert. denied**, 123 S.Ct. 1908 (2003).

I review the complaint to determine whether it "'contains enough facts to state a claim to relief that is plausible on its face.'"  **Ridge at Red Hawk, L.L.C. v. Schneider**, 493 F.3d 1174, 1177 (10th  Cir. 2007) (quoting **Bell Atlantic Corp. v. Twombly**, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)).  "Thus, the mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these*

claims." *Id.* (emphases in original).[2]  Nevertheless, the standard remains a liberal one, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." ***Dias v. City and County of Denver***, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting ***Twombly***, 127 S.Ct. at 1965) (internal quotation marks omitted).

### III. ANALYSIS

This case arises out of the murders of Jennifer Carpenter and her boyfriend, Steve Staskiewicz.  Carpenter was the victim and key witness in the kidnaping and rape trial of Charles Stroud and Becky Corkins.  Defendant, Detective Mark A. Finley, was assigned to investigate the murders.

During the course of his investigation, Finley had reason to believe that certain parties were solicited to murder Ms. Carpenter and Mr. Staskiewicz.  Particularly, plaintiff alleges that, prior to the murders, the El Paso County Sheriff's Office intercepted

---

[2] ***Twombly*** rejected and supplanted the "no set of facts" language of ***Conley v. Gibson***, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).  The Tenth Circuit clarified the meaning of the "plausibility" standard:

> "plausibility" in this context must refer to the scope of the allegations in a complaint:  if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible."  The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.
>
> This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them.  "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests."

***Robbins v. Oklahoma***, 519 F.3d 1242, 1247-48 (10th Cir. 2008) (quoting ***Twombly***, 127 S.Ct. at 1974) (internal citations and footnote omitted).

two letters, one written by Stroud and the other by Charles Anthony Tate, purportedly outlining a plan and solicitation to murder Carpenter. Plaintiff maintains that although Finley was aware of these letters, he never provided them to the district attorney. Moreover, during the course of his investigation, Finley allegedly conducted an unconstitutional custodial interview and an involuntary search of plaintiff's home. Plaintiff contends that Finley utilized the information illegally obtained to secure a search warrant for his home and car, during the course of which he found and seized a .380 caliber handgun and compatible ammunition, the same caliber as the weapon used to kill Carpenter and Staskiewicz.

Kennedy complained about Finley's conduct to the El Paso County Sheriff's Office, and thereafter, the investigation apparently languished. Finley left the Sheriff's Office for some unspecified period of time, but later returned when defendant John Wesley Anderson was elected sheriff. Following his return, Finley was reassigned to the Carpenter/Staskiewicz murders.

Plaintiff alleges that, because of his prior complaints, Finley harbored resentment toward him and set out to build a case against him. To that end, he allegedly hired defendant Ernest Roger Peele of the FBI to match the lead contents of the bullets used to kill Carpenter and Staskiewicz to unfired bullets found in the search of plaintiff's home and car. Plaintiff claims that the scientific validity of this practice is suspect and unreliable. Nevertheless, Peele purportedly confirmed that the bullets that killed Carpenter and Staskiewicz came from the same box of ammunition as those that were obtained from plaintiff's home.

Ultimately, plaintiff alleges that, based on the illegal search of his home and car, the suppression of the Stroud/Tate letters, and the opinion of Agent Peele regarding the comparative bullet lead analysis, the District Attorney made the decision to prosecute him for the Carpenter/Staskiewicz murders.  On August 8, 1995, plaintiff was found guilty on two counts of first degree murder and was sentenced to two consecutive life terms without the possibility of parole.

After eleven years in prison, Mr. Kennedy was granted a post-conviction hearing pursuant to Rule 35(c) of the Colorado Rules of Criminal Procedure.  As a result of that hearing, Mr. Kennedy's conviction for both murders was set aside, and a new trial was ordered on April 21, 2009.  The government has appealed that decision to the Colorado Court of Appeals, and that appeal remains pending at this time.  In the meantime, plaintiff filed this lawsuit, bringing claims for malicious prosecution against Finley, Peele, Anderson, and the present El Paso County Sheriff, Terry Maketa, in both their official and individual capacities, as well as a claim for municipal liability against the El Paso County Sheriff's Office.[3]

The county defendants now seek to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6).[4]  They first contend that plaintiff's malicious prosecution claim

---

[3] Although plaintiff also appears to allege a claim of supervisory liability against the United States based on Peele's actions, that claim is not before me.  Moreover, although defendants seek to dismiss plaintiff's Fourth and Fifth Amendment claims as time-barred, plaintiff clarifies in his response that he invokes these constitutional precepts only as context for his malicious prosecution and municipal liability claims.  Based on that representation, that portion of defendants' motion is denied as moot.

[4] I note that although defendants do not list Anderson among the named "County Defendants" they identify as bringing the motion to dismiss, they refer to Anderson and include argument relevant to the claims against him throughout the motion.  In addition, the attorney who filed the motion has entered an appearance on behalf of Anderson.

has not yet accrued because, although, he was granted a new trial, the government's appeal of that decision prevents plaintiff from demonstrating that the prior criminal proceeding has terminated in his favor, an essential element of any malicious prosecution claim. *See Hewitt v. Rice*, 154 P.2d 408, 411 (Colo. 2007).

Defendants' arguments implicate the "hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments" stated in *Heck v. Humphrey*, 512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). The *Heck* rule provides that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, *declared invalid by a state tribunal authorized to make such determination*, or called into question by a federal court's issuance of a writ of habeas corpus.

*Heck,* 114 S.Ct. at 2372 (emphasis added, footnote omitted). Ultimately, the *Heck* rule delays what would otherwise be the accrual date of a tort action until the setting aside of an extant conviction. *See id.* at 2372-73.

Nevertheless, defendants miss the mark in suggesting that plaintiff's claims have not yet accrued because those claims necessarily would impugn the validity of evidence that might be introduced in any retrial of the charges. Although the government has appealed the state district court's order granting plaintiff's motion for new trial, there can be no question but that his underlying conviction has been "declared invalid by a state tribunal authorized to make such determination." *Id.* at 2372. Regardless whether the

government succeeds in its appeal and, if so, ultimately secures a new conviction against plaintiff in light of the extant evidence, it is clear that, at present, there is no presently outstanding criminal conviction as to which the rule of *Heck* could be applied.[5] The Supreme Court has refused to apply the rule to an anticipated future conviction, calling it "a bizarre extension of *Heck*." *Wallace v. Kato*, 549 U.S. 384, 393, 127 S.Ct. 1091, 1098, 166 L.Ed.2d 973 (2007). Therefore, defendants' motion to dismiss these claims under *Heck* must be denied.

Alternatively, defendants argue that plaintiff's malicious prosecution claim against Maketa in his individual capacity must be dismissed because Maketa did not have the requisite personal participation. I agree. *See Foote v. Spiegel*, 118 F.3d 1416, 1423-24 (10th Cir. 1997); *Grimsley v. MacKay*, 93 F.3d 676, 679 (10th Cir. 1996). Maketa was sworn into office on January 14, 2003, more than five and a half years after plaintiff was convicted. Given this lapse of time, it is clear that Maketa could not have had any personal involvement whatsoever in the alleged constitutional violations that inform plaintiff's malicious prosecution claim. Moreover, plaintiff's allegations that Maketa failed to discipline Finley for his alleged indiscretions years after the fact is far too attenuated a thread on which to demonstrate the requisite personal involvement of a superior. Thus, defendants' motion to as to this claim is well taken and will be granted.

Plaintiff also sues Anderson and Maketa in their official capacities. A suit against an individual officer of a government agency in his or her official capacity is really "only another way of pleading an action against an entity of which an officer is an agent."

---

[5] Indeed, plaintiff is out of prison on bail pending determination of the government's appeal.

7

*Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114 (1985) (quoting *Monell v. New York City Police Dept. of Social Services*, 436 U.S. 658, 690, n. 55, 98 S.Ct. 2018, 2035 n.55, 56 L.Ed.2d 611 (1978)) (internal quotation marks omitted). "[A] plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Id.* As plaintiff seeks only damages and an award of attorney fees by this suit, and has named as the El Paso County Sheriff's Office as an additional defendant, the official capacity claims against Anderson and Maketa must be dismissed

Finally, defendants seek to dismiss plaintiff's municipal liability claims against the El Paso County Sheriff's Office. "[A] municipality may not be held liable under § 1983 solely because its employees inflicted injury on the plaintiff. Rather, to establish municipal liability, a plaintiff must show 1) the existence of a municipal policy or custom, and 2) that there is a direct causal link between the policy and the injury alleged." *Bryson v. City of Oklahoma City*, 627 F.3d 784, 789 (10th Cir. 2010, *cert. denied*, – S.Ct. –, 2011 WL 1481307 (June 20, 2011) (citation and internal quotation marks omitted). Plaintiff alleges that Anderson, knowing of plaintiff's complaints regarding Finley's conduct of the prior investigation and aware of the existence of the allegedly exculpatory Stroud/Tate letters, nevertheless assigned Finley to the renewed investigation when he rejoined the force. (**Complaint** ¶¶ 51-53 [#1], filed April 12, 2011.)[6] A policy or custom may be shown by evidence that a final policymaker ratified a

---

[6] However, and despite plaintiff's suggestion in his response that, if Anderson was unaware of Finley's actions, he may be liable for failure to supervise or train, any such permutation of his municipal liability claim is not supported by the allegations of the complaint as currently drafted.

subordinate's allegedly unconstitutional acts. ***Brammer-Hoelter v. Twin Peaks Charter Academy***, 602 F.3d 1175, 1189 (10th Cir. 2010).[7] The allegations of the complaint are sufficient to make a plausible claim on that basis. Moreover, the allegations of the complaint suggest a direct causal link between Finley's actions and Anderson's staffing decisions, on the one hand, and plaintiff's conviction, on the other. Thus, defendants' motion to dismiss the municipal liability claim against the El Paso County Sheriff's Office will be denied.[8]

    **THEREFORE, IT IS ORDERED** as follows:

    1. That **County Defendants' Motion To Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6)** [#6] filed June 1, 2011, is **GRANTED IN PART** and **DENIED IN PART**;

    2. That the motion is **GRANTED** as follows:

        a. that plaintiff's claim for malicious prosecution against defendant, Sheriff Terry Maketa, in his individual capacity, is **DISMISED WITH PREJUDICE**;

        b. That plaintiff's claims for malicious prosecution against defendants, Sheriff Terry Maketa and Sheriff John Wesley Anderson, in their official capacities, are **DISMISSED WITH PREJUDICE**;

---

[7] Neither party seems to question the notion that the El Paso County Sheriff is a final policymaker with respect to decisions regarding what cases to investigate and how such investigations should be staffed. ***See County of Adams v. Hibbard***, 918 P.2d 212, 219 (Colo. 1996) ("To be a policymaker, the governmental official or officials must be responsible for establishing final policy with respect to the subject matter in question.") (citation and internal quotation marks omitted); ***see also*** § 30-10-516, C.R.S. (stating that in discharge of their duty to keep and preserve the peach, sheriffs "may call to their aid such person or their county as they may deem necessary").

[8] Contrariwise, there is no such direct link between Maketa's alleged failure to discipline Finley since his investiture as El Paso County Sheriff in 2003 and plaintiff's injuries, and, thus, no municipal liability may be premised on the alleged actions or inaction of Maketa.

9

3. That otherwise, the motion is **DENIED**;

4. That at that time judgment enters, judgment **SHALL ENTER** on behalf of defendant, Sheriff Terry Maketa, against plaintiff, Timothy John Kennedy, as to all claims for relief and causes of action asserted against him in this lawsuit; provided, that the judgment as to these claims shall reflect their dismissal with prejudice;

5. That at the time judgment enters, judgment **SHALL ENTER** on behalf of defendant, Sheriff John Wesley Anderson, against plaintiff, Timothy John Kennedy, as to plaintiff's claim for malicious prosecution against Anderson in his official capacity; provided, that the judgment as to this claim shall reflect its dismissal with prejudice;

6. That plaintiff's **Request for Oral Arguments on the County Defendants' Motion To Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6)** [#13] filed July 19, 2011, is **DENIED**; and

7. That defendant, Sheriff Terry Maketa, is **DROPPED** as a named party to this action, and the case caption **AMENDED** accordingly.

Dated July 28, 2011, at Denver, Colorado.

                    **BY THE COURT:**

_Bob Blackburn_
Robert E. Blackburn
United States District Judge