**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 11-cv-00967-REB-KMT

TIMOTHY JOHN KENNEDY,

      Plaintiff,

v.

MARK A. FINLEY,
ERNEST ROGER PEELE,
SHERIFF JOHN WESLEY ANDERSON,
EL PASO COUNTY SHERIFF'S OFFICE, and
UNITED STATES OF AMERICA,

      Defendants.

## ORDER RE: MOTIONS TO DISMISS

**Blackburn, J.**

The matters before me are (1) the **Motion To Dismiss by Defendant Peele** [#34][1] filed September 13, 2011; and (2) the **Motion To Dismiss by Defendant United States of America** [#35] filed September 13, 2011. I grant the government's motion in part and deny it as moot in part, and I deny defendant Peele's motion.

### I. JURISDICTION

I have subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question).

### II. STANDARD OF REVIEW

Defendants' motions raise issues under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6). A motion to dismiss under Fed. R. Civ. P. 12(b)(1) may consist of either a

---

[1] "[#34]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

facial or a factual attack on the complaint. **Holt v. United States**, 46 F.3d 1000, 1002 (10th Cir. 1995). Because defendants' motion presents a facial attack, I must accept the allegations of the complaint as true. **Id**. Plaintiff bears the burden of establishing that subject matter jurisdiction exists. **Henry v. Office of Thrift Supervision**, 43 F.3d 507, 512 (10th Cir. 1994); **Fritz v. Colorado**, 223 F.Supp.2d 1197, 1199 (D. Colo. 2002).

When ruling on a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), I must determine whether the allegations of the complaint are sufficient to state a claim within the meaning of Fed. R. Civ. P. 8(a). For many years, "courts followed the axiom that dismissal is only appropriate where 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" **Kansas Penn Gaming, LLC v. Collins**, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting **Conley v. Gibson**, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). Noting that this standard "has been questioned, criticized, and explained away long enough," the Supreme Court supplanted it in **Bell Atlantic Corp. v. Twombly**, 550 U.S. 544, 562, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007). Pursuant to the dictates of **Twombly**, I now review the complaint to determine whether it "'contains enough facts to state a claim to relief that is plausible on its face.'" **Ridge at Red Hawk, L.L.C. v. Schneider**, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting **Twombly**, 127 S.Ct. at 1974). "This pleading requirement serves two purposes: to ensure that a defendant is placed on notice of his or her alleged misconduct sufficient to prepare an appropriate defense, and to avoid ginning up the costly machinery associated with our civil discovery regime on the basis of a largely groundless claim." **Kansas Penn Gaming**, 656 F.3d at 1215

(citation and internal quotation marks omitted).

As previously, I must accept all well-pleaded factual allegations of the complaint as true. **McDonald v. Kinder-Morgan, Inc.**, 287 F.3d 992, 997 (10th Cir. 2002). Contrastingly, mere "labels and conclusions or a formulaic recitation of the elements of a cause of action" will not be sufficient to defeat a motion to dismiss. **Ashcroft v. Iqbal**, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citations and internal quotation marks omitted). **See also Robbins v. Oklahoma**, 519 F.3d 1242, 1247-48 (10th Cir. 2008) ("Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.") (quoting **Twombly**, 127 S.Ct. at 1974) (internal citations and footnote omitted). Moreover, to meet the plausibility standard, the complaint must suggest "more than a sheer possibility that a defendant has acted unlawfully." **Iqbal**, 129 S.Ct. at 1949. **See also Ridge at Red Hawk**, 493 F.3d at 1177 ("[T]he mere metaphysical possibility that *some* plaintiff could prove *some* set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims.") (emphases in original). For this reason, the complaint must allege facts sufficient to "raise a right to relief above the speculative level." **Kansas Penn Gaming**, 656 F.3d at 1214 (quoting **Twombly**, 127 S.Ct. at 1965). The standard will not be met where the allegations of the complaint are "so general that they encompass a wide swath of conduct, much of it innocent." **Robbins**, 519 F.3d at 1248. Instead "[t]he allegations must be enough that, if assumed to be true, the plaintiff

plausibly (not just speculatively) has a claim for relief." *Id.*

The nature and specificity of the allegations required to state a plausible claim will vary based on context and will "require[] the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950; *see also Kansas Penn Gaming*, 656 F.3d at 1215. Nevertheless, the standard remains a liberal one, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Dias v. City and County of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting *Twombly*, 127 S.Ct. at 1965) (internal quotation marks omitted).

### III. ANALYSIS

The facts of this case were recited at length in my prior **Order Re: Motion To Dismiss** [#14] filed July 28, 2011, and need not be repeated at length here. In connection with the investigation of the murders of Jennifer Carpenter and Steve Staskiewicz, defendant Mark A. Finley, a detective with the El Paso County Sheriff's Office, hired defendant Ernest Roger Peele, an FBI Special Agent, to conduct lead analysis tests on the bullets recovered from the murder scene and compare them to bullets found during an allegedly illegal search of plaintiff's home. Plaintiff alleges that Agent Peele and the FBI knew at the time that the this type of analysis "lacked statistical and scientific basis," but failed to disclose these doubts as to its reliability. (**Am. Compl.** ¶ 29 at 6.)

Agent Peele's report detailing the results of his analysis is alleged to have been found insufficient to justify prosecution. Several months after the report was prepared,

however, the district attorney allegedly contacted Agent Peele "for a definitive statement regarding the analysis performed on the bullets and live cartridges submitted." (*Id.* ¶ 31 at 6.)  Agent Peele allegedly stated falsely, "that the bullets which killed Carpenter and Staskiewicz came from the same box as those seized from [plaintiff's] house." (*Id.*) Plaintiff alleges that the statement helped convince the district attorney to move forward with the prosecution (*id.* ¶ 34 at 7) and was utilized to obtain an arrest warrant and at plaintiff's preliminary hearing (*id.* ¶ 31 at 6 & ¶¶ 35-36 at 7).  Agent Peele likewise testified at plaintiff's 1997 trial for murder.  (*Id.* ¶ 39 at 8.)

Plaintiff ultimately was convicted of the murders and sentenced to two consecutive life terms without possibility of parole.  In April 2009 a state district court vacated plaintiff's convictions and ordered a new trial.[2]  This lawsuit followed.

Plaintiff has brought constitutional claims sounding in malicious prosecution against all defendants.  Agent Peele and the United States, which was substituted on its own motion for Agent Peele with respect to plaintiff's Federal Tort Claims Act ("FTCA") claim (*see* **Minute Order** [#32] filed September 12, 2012), now move to dismiss the claims against them.

I first address the jurisdictional issued raised by the United States as to the FTCA claim.  *See* ***Tafoya v. Department of Justice***, 748 F.2d 1389, 1390 (10th Cir. 1984) (court always must "satisfy itself of its power to adjudicate in every case").  The FTCA provides that "a tort claim against the United States shall be forever barred unless . . . action is begun within six months after the date of mailing . . . of notice of final denial of

---

[2]   Just last week, the state appellate court upheld that decision.  (**See County Defendants' Status Report** [#77] filed June 25, 2012.)

the claim by the [appropriate Federal] agency to which it was presented." 28 U.S.C. § 2401(b).[3] Because the timeliness requirements of the FTCA define the conditions under which the government has agreed to waive its sovereign immunity, compliance with those requirements is jurisdictional. *In re Franklin Savings Corp.*, 385 F.3d 1279, 1287 (10th Cir. 2004), *cert. denied*, 126 S.Ct. 337 (2005). Thus, a plaintiff must exhaust his administrative remedies prior to bringing suit. 28 U.S.C. § 2675(a); *McNeil v. United States*, 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993); *Duplan v. Harper*, 188 F.3d 1195, 1199 (10th Cir. 1999).

It is undisputed here that plaintiff initiated his administrative claim just one day prior to filing the instant lawsuit. That claim was not denied, and thus not exhausted, until June 21, 2011. Although the amended complaint adding the FTCA claim was filed after that date, "a premature complaint cannot be cured through amendment, but instead, plaintiff must file a new suit." *Duplan*, 188 F.3d at 1199 (citation and internal quotation marks omitted). Moreover, the addition of the FTCA claim did not change or add to the essential nature of plaintiff's claims against the government, and thus it cannot be construed as an entirely new claim running solely from the date of the filing of the amended complaint. *See Ajaj v. Federal Bureau of Prisons*, 2012 WL 1020487 at *4-6 (D. Colo. March 27, 2012); *cf. Ajaj v. United States*, 2006 WL 1305198 at *6 (D. Colo. May 11, 2006) (holding that section 2675(a) did not bar suit where FTCA claim did not relate back to filing of original complaint; plaintiff asserted no tort claims prior to bringing amended complaint, and FTCA claim did not arise out of conduct alleged in

---

[3] In addition, the claim must be brought before the appropriate agency within two years of the date it accrued. *In re Franklin Savings Corp.*, 385 F.3d at 1287.

original complaint). I thus am constrained to dismiss the FTCA claim against the United States for lack of jurisdiction.[4]

I now turn to Agent Peele's motion. His first and primary argument is that he is absolutely immune from plaintiff's claims as a testifying witness. ***See Briscoe v. LaHue***, 460 U.S. 325, 328, 103 S.Ct. 1108, 1111, 75 L.Ed.2d 96 (1983); ***Anthony v. Baker***, 955 F.2d 1395,1400 (10th Cir. 1992). This immunity, which existed at common law, serves the dual purposes of ensuring that witnesses come forward, in the first instance, and that they present truthful evidence to the tribunal:

> A witness's apprehension of subsequent damages liability might induce two forms of self-censorship. First, witnesses might be reluctant to come forward to testify. And once a witness is on the stand, his testimony might be distorted by the fear of subsequent liability. Even within the constraints of the witness's oath there may be various ways to give an account or to state an opinion. These alternatives may be more or less detailed and may differ in emphasis and certainty. A witness who knows that he might be forced to defend a subsequent lawsuit, and perhaps to pay damages, might be inclined to shade his testimony in favor of the potential plaintiff, to magnify uncertainties, and thus to deprive the finder of fact of candid, objective, and undistorted evidence.

***Briscoe***, 103 S.Ct. at 1114 (citations omitted). Insofar as plaintiff's claim implicates Agent Peele's testimony during pretrial proceedings and at trial, therefore, it is clear beyond question that Agent Peele is entitled to absolute immunity. To that extent, Agent Peele's motion must be granted.

---

[4] Of course, plaintiff may refile that claim, and equitable tolling is almost certain to save those claims from dismissal on limitations grounds. ***See Hyatt v. United States***, 968 F.Supp. 96, 100-01 (E.D.N.Y. 1997).

However, plaintiff's claim does not rest solely on Agent Peele's in-court testimony.  He has alleged also that Agent Peele, knowing that the results of his lead bullet analysis were unreliable, nevertheless informed the district attorney that the bullets found at the crime scene came from the same box of ammunition as those recovered from plaintiff's home.  In other words, Agent Peele is alleged to have knowingly fabricated evidence that influenced the prosecutor's decision to pursue charges against plaintiff.  This allegation is sufficient to plausibly suggest that Agent Peele was a "complaining witness," that is, a person "who actively instigated or encouraged the prosecution of the plaintiff."  **Anthony**, 955 F.2d at 1399 n.2.  As such, he enjoys no immunity from suit.  **See Malley v. Briggs**, 475 U.S. 335, 340-41, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986); **Anthony**, 955 F.2d at 1399.

It is important to maintain the analytical distinction between the roles of a complaining witness and a testifying witness.  Just this term, the Supreme Court clarified that the complaining witness had a "distinctive function . . . during the period when § 1983's predecessor was enacted:"

> At that time, the term complaining witness was used to refer to a party who procured an arrest and initiated a criminal prosecution.  A complaining witness might not actually ever testify, and thus the term "witness" in "complaining witness" is misleading.
>
> It is true that a mid-19th century complaining witness might testify, either before a grand jury or at trial.  But testifying was not a necessary characteristic of a complaining witness.

**Rehberg v. Paulk**, – U.S. –, 132 S.Ct. 1497, 1507, 182 L.Ed.2d 593 (2012) (internal citations and quotation marks omitted).  Even so, where the complaining witness

actually testifies, he cannot be held liable. *Id*. *See also Gregory v. City of Louisville*, 444 F.3d 725, 738-39 (6th Cir. 2006) ("Subsequent testimony cannot insulate previous fabrications of evidence merely because the testimony relies on that fabricated evidence. . . . Merely because a state actor compounds a constitutional wrong with another wrong which benefits from immunity is no reason to insulate the first constitutional wrong from the actions for redress. "), *cert. denied*, 127 S.Ct. 962 (2007); *Anthony*, 955 F.2d at 1400 n.4 (courts "have not been careful to distinguish between the constitutional tort of giving false testimony and the constitutional tort of a complaining witness initiating a baseless prosecution"); *Norris v. City of Aurora*, 2005 WL 1768758 at *7-8 (D. Colo. July 25, 2005) (caselaw "does not indicate that the fact that an officer acted as a complaining witness in initiating a criminal case eliminates the broad witness protection provided by *Briscoe*"). Accordingly, the fact that Agent Peele later testified as an expert witness does not immunize his alleged non-testimonial statements. *See Pierce v. Gilchrist*, 359 F.3d 1279, 1300 (10th Cir. 2004) (holding that an action could proceed against a forensic hair examiner accused of intentionally or recklessly falsifying her investigative report); *Keko v. Hingle*, 318 F.3d 639, 644 (5th Cir. 2003) (declining to extend absolute immunity to a forensic examiner who allegedly falsified a forensic report).[5] Accordingly, Agent Peele's motion to dismiss for lack of jurisdiction on the basis of absolute immunity is denied.

---

[5] *Rehberg*, works no sea change in this well-established doctrine. Although the Court concluded that grand jury witnesses enjoyed absolute immunity for their testimony as well as for "preparatory activity, such as a preliminary discussion in which the witness relates the substance of his intended testimony," 132 S.Ct. at 1507, it also confirmed that absolute immunity did not "extend[] to all activity that a witness conducts outside of the grand jury room," including, for example, the falsification of affidavits or evidence, *id.* at 1507 n.1.

Agent Peele claims also that the amended complaint fails to adequately plead a cause of action for malicious prosecution.[6]  To the extent that the elements of the tort of malicious prosecution as formulated in Colorado are informative,[7] the amended complaint sets forth facts sufficient to make out a plausible claim.  To prove a claim for relief for malicious prosecution under Colorado law, a plaintiff must demonstrate: "(1) the defendant contributed to bringing a prior action against the plaintiff; (2) the prior action ended in favor of the plaintiff; (3) no probable cause; (4) malice; and (5) damages."  **Hewitt v. Rice**, 154 P.3d 408, 411 (Colo. 2007).  Agent Peele suggests that the amended complaint fails to adequately plead the first, third, and fourth of these elements.  I disagree.

As should be apparent from the foregoing discussion, the amended complaint asserts facts sufficient to suggest a plausible claim that Agent Peele was a complaining witness insofar as he made out-of-court statements to the district attorney that contributed directly to the decision to bring charges against plaintiff.  Agent Peele

---

[6]  Agent Peele also advances an argument urging me to find that there is no **Bivens** remedy for redress of a claim sounding in malicious prosecution.  This argument is woefully underdeveloped, which in itself provides grounds not to consider it.

Substantively, however, the argument fails in any event.  First, it depends on Agent Peele's assertion that the same policy considerations that inform the common law doctrine of absolute witness immunity should pertain to preclude such a claim.  Yet Agent Peele is not entitled to such immunity for his alleged non-testimonial acts.  Moreover, the argument is clearly foreclosed by the Tenth Circuit's decision in **Pierce v. Gilchrist**.

[7]  Of course, plaintiff's claim is pleaded, as it must be, as arising under the Fourth, Fifth, and Fourteenth Amendments to the Constitution.  **See Pierce**, 359 F.3d at 1285-86.  Although the state law tort of malicious prosecution provides the most closely analogous paradigm under which to analyze claims such as those asserted by plaintiff, **id.** at 1286, the elements of the tort under any particular state's law provide only a "starting point" for the constitutional analysis, **id.** at 1288.  "[T]he term 'common law,' in this context, refers not to the specific terms of the tort law of any particular state, but to general principles of common law among the several states. . . .  Those rules are applicable by analogy – but only by analogy – to constitutional torts."  **Id.** (footnote omitted).  "[T]he ultimate question is whether plaintiff can prove a constitutional violation."  **Id.**

suggests that other evidence demonstrates that the content of this alleged phone call may be overstated, and points out that plaintiff stipulated at trial that the gun belonged to him,[8] but it is not appropriate to consider these evidentiary matters at this juncture. *See Dias*, 567 F.3d at 1178 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.").

Likewise, the amended complaint adequately alleges that there was no probable cause for plaintiff's arrest. Agent Peele maintains that, excluding his alleged statements, the arrest warrant affidavit still included evidence that was more than sufficient to support a finding of probable cause. *See Pierce*, 359 F.3d at 1293 ("In the case of a Fourth Amendment claim of falsified evidence, the existence of probable cause is determined by setting aside the false information and reviewing the remaining contents of the affidavit."). The problem with this argument is that it ignores plaintiff's allegations that the remainder of the evidence contained in the warrant affidavit also was infirm. Although the parties have cited to no analogous case, and this court has found none,[9] it cannot be the law that a defendant may escape liability for allegedly falsifying evidence simply because he was but one of several parties whose fabrications together contributed to the constitutional deprivation. Of course, plaintiff "bear[s] the

---

[8] It is not entirely clear to the court how Agent Peele believes this stipulation informs the issue of plaintiff's guilt or innocence. Moreover, plaintiff suggests that it was the prospect of Agent Peele's testimony that convinced his attorney to agree to the stipulation. In all events, a motion to dismiss under Rule 12(b)(6) is not the appropriate vehicle to consider such factual disputes.

[9] The Tenth Circuit has stated that defendants may not rely on evidence that may have established probable cause when such evidence was not revealed in the warrant application. *See Wilkins v. DeReyes*, 528 F.3d 790, 802 (10th Cir. 2008), *cert. denied*, 129 S.Ct. 1526 (2009).

heavy burden of showing that [Agent Peele's] falsification of inculpatory evidence or suppression of exculpatory evidence was necessary to the finding of probable cause." *Id.* at 1295. Whether he will ultimately be able to meet that burden, however, presently is not before me. It is sufficient that the amended complaint sets forth, in adequate detail, facts that if true would show that the affidavit was not supported by probable cause.

Moreover, and contrary to Agent Peele's construction, plaintiff's allegations of malice are not wholly conclusory, but rather based on factual averments that Agent Peele knew his methods were questionable, but nevertheless made definitive statements confirming a match between the bullets found at the crime scene and those found at plaintiff's home. Such allegations are sufficient to plausibly assert the element of malice. *See Wilkins v. DeReyes*, 528 F.3d 790, 801 (10th Cir. 2008), *cert. denied*, 129 S.Ct. 1526 (2009); *Pierce*, 359 F.3d at 1296-97 & n.12. *See also Sancetta v. Apollo Stereo Music Co.*, 616 P.2d 182, 183 (Colo. App. 1980) ("Malice may be inferred from a lack of probable cause."). I thus find and conclude that the amended complaint adequately states a plausible claim and is not subject to dismissal under Rule 12(b)(6).

Finally, Agent Peele asserts that he is entitled to qualified immunity.[10] Officials

---

[10] Agent Peele's suggestion that he did not personally participate in plaintiff's arrest or prosecution ignores precedent in this circuit and borders on frivolous. A defendant is not insulated from liability simply because the prosecutor, grand jury, and petit trial jury also had to act in order to effectuate the ultimate harm:

> A prosecutor's decision to charge, a grand jury's decision to indict, a prosecutor's decision not to drop charges but to proceed to trial-none of these decisions will shield a police officer who deliberately supplied misleading information that influenced the decision . . . . If police officers have been instrumental in the plaintiff's continued confinement or

are immune from civil liability unless their actions violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *see also Herring v. Keenan*, 218 F.3d 1171, 1175 (10th Cir. 2000), *cert. denied*, 122 S.Ct. 96 (2001). To overcome this immunity, plaintiff must establish both that Agent Peele violated his rights under federal law and that such rights were clearly established at the time of the violation. *Greene v. Barrett*, 174 F.3d 1136, 1142 (10th Cir. 1999). In light of the Tenth Circuit's decision in *Pierce v. Gilchrist*, Agent Peele cannot seriously contest either element of this test. *See Pierce*, 359 F.3d at 1297-1300.[11]

Accordingly, I deny Agent Peele's motion for summary judgment.

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Motion To Dismiss by Defendant United States of America** [#35] filed September 13, 2011, is **GRANTED IN PART** and **DENIED AS MOOT IN PART** as follows:

   a. That the motion is **GRANTED** insofar as it seeks dismissal for failure to properly exhaust administrative remedies; and

   b. That the motion in all other respects is **DENIED AS MOOT**;

---

> prosecution, they cannot escape liability by pointing to the decisions of prosecutors or grand jurors, or magistrates to confine or prosecute him. They cannot hide behind the officials whom they have defrauded.

*Pierce*, 359 F.3d at 1292 (citation and internal quotation marks omitted).

[11] Agent Peele's attempts to differentiate *Pierce* on its facts are unavailing. Although the allegations against the forensic expert in that case indeed were egregious, the differences between that case and this one are matters of degree, not kind.

2. That plaintiff's claims against the United States of America are **DISMISSED WITHOUT PREJUDICE** for lack of federal subject matter jurisdiction;

3. That the United States of America is **DROPPED** as a named party to this action, and the case caption **AMENDED** accordingly; and

4. That the **Motion To Dismiss by Defendant Peele** [#34], filed September 13, 2011, is **DENIED**.

Dated July 2, 2012, at Denver, Colorado.

**BY THE COURT:**

*/s/ Robert E. Blackburn*
Robert E. Blackburn
United States District Judge